# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| JOHN PETSCHE,<br><br>      Plaintiff,<br><br>  v.<br><br>JERRY HRUBY, DAVID MATTY, GERALD BROSKI, LOUIS CAROUSE, JR., LAURA REDINGER, KIMBERLY VERAS, and CITY OF BRECKSVILLE<br><br>      Defendants. | Case No. _____<br><br>Judge _____<br><br>**Complaint with Jury Demand** |

## I. Introduction

1. This case is brought pursuant to 42 U.S.C. § 1983 for deprivation of civil rights guaranteed by the First, Fourth, and Fourteen Amendments to the U.S. Constitution and under the laws of the State of Ohio against the City of Brecksville and various of its former and current public officials, who used the power of their offices to unlawfully retaliate against Plaintiff John (Jack) Petsche for his political advocacy and speech criticizing Defendants and their policies.

2. Shortly after Petsche was elected to Brecksville's city council in 2018, the City's mayor and law director, along with his fellow councilpersons, conspired to engineer a baseless felony prosecution against him to snuff out his dissenting voice and political career, in retaliation for his exercise of his First Amendment rights. To ensure that Petsche would be prosecuted, Defendants provided false and misleading information to investigators and otherwise withheld material information that they knew would confirm a lack of probable cause for any criminal charges against Petsche. Petsche was thus forced to vacate his elected office and spend two years of his life and hundreds of thousands of dollars in legal fees to defend against these bogus felony charges, which were dismissed on a Rule 29 motion for acquittal.

## II. Jurisdiction and Venue

3. This Court has federal-question jurisdiction over this action pursuant to 28 U.S.C. § 1331 for the claims raised under 42 U.S.C. § 1983 and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for claims raised under Ohio law.

4. This Court has jurisdiction over Defendants because they are residents or political subdivisions of the State of Ohio.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the acts upon which the claims in this litigation are based and the damages resulting therefrom occurred in Cuyahoga County, Ohio.

## III. Parties

6. Plaintiff is a resident of the City of Brecksville, Cuyahoga County, Ohio.

7. Defendant Jerry Hruby is and was at all relevant times the mayor of Brecksville and is a resident of Brecksville. He is being sued in his individual capacity.

8. Defendant David Matty is and was at all relevant times Brecksville's law director and is a resident of Brecksville. He is being sued in his individual capacity.

9. Defendant Laura Redinger is and was at all relevant times a member of the Brecksville City Council and is a resident of Brecksville. She is being sued in her individual capacity.

10. Defendants Gerald Broski, Louis Carouse Jr., and Kimberly Veras were at all relevant times members of the Brecksville City Council and are residents of Brecksville. They are each being sued in their individual capacities.

11. Defendant City of Brecksville is a municipal corporation in Cuyahoga County, Ohio. The city's legislative authority is vested in its City Council, which is composed of elected members.

## IV. Facts

12. Petsche has been one of the most civically active and influential citizens in Brecksville since having become a resident of the city in 1996. In 2012, Petsche and his wife, Rose, drafted and led an

ultimately successful ballot initiative by which the City's residents adopted a formal resolution supporting a national constitutional amendment intended to ameliorate the corrupting effects of corporate cash on U.S. elections and declaring a city-wide "Democracy Day," which required the city to hold a public hearing on the influence of money on politics.[1] City leaders opposed this resolution, including law director David Matty, who unsuccessfully challenged it on the City's behalf at the Cuyahoga County Board of Elections, and longtime Mayor Jerry Hruby, who also sought (unsuccessfully) to invalidate the resolution in The Supreme Court of Ohio. *See State ex rel. Brecksville v. Husted*, 133 Ohio St.3d 301, 2012-Ohio-4530.

13. In furtherance of his campaign for accountable and effective City government, Petsche decided to run for local office, and in 2017, he was elected as one of the only Democrats on the Brecksville City Council, which was otherwise dominated by Republicans. He was sworn in as a member of City Council on January 2, 2018.

14. Petsche is also the owner of USA Roofing, a company he founded in 1995 that has constructed the roofs on some of the most iconic buildings in Northeast Ohio, including Peters Hall at Oberlin College, which was originally constructed in 1896, St. Paul's Shrine at East 40th Street in Cleveland, and the recently restored League Park facility, former home of Cleveland's Negro League and Major League Baseball teams.

15. As a member of City Council, Petsche continued to be an outspoken advocate for transparent and accountable government.

16. To wit, shortly after taking office, Petsche spoke out against the City's treatment of a $680,000+ shortfall in a municipal bond sinking fund for construction of the water and sewer lines to the Brecksville's Four Seasons neighborhood, which was one of the newest and most expensive

---

[1] *See* Robert Rozboril, "Brecksville citizens group holds public hearing about Issue 25," *Cleveland.com* (Jan. 12, 2019), available at:

https://www.cleveland.com/brecksville/2012/10/brecksville_citizens_group_hol.html

residential developments in the city. This debt related to charges that the county erroneously failed to assess to Four Seasons residents, which included two Council members, Kim Veras and former Council President Mike Harwood (the latter of whom has since deceased). To pay the debt, Hruby and Matty attempted to approve an appropriation to pay it from the City's general fund, which caused Petsche to speak out against the lack of transparency in this process. This sparked media coverage and vocal public opposition to the bailout. The incident also led to the formation of a political group called "A Better Brecksville," which ran a slate of four Council candidates seeking to inject new and independent voices into the Brecksville government. Petsche's advocacy on this issue drew the ire of his fellow councilpersons and other city leaders, including Hruby and Matty. Hruby and Matty both publicly expressed their anger with Petsche over his opposition to their Four Seasons dealings.[2]

17.     In retaliation for Petsche's speech, Hruby and Matty sought to exploit Petsche's ownership of USA Roofing to institute a retaliatory criminal prosecution against him. In 2017, before Petsche became a member of City Council, USA Roofing was awarded a roofing subcontract for Brecksville's new police station by the general contractor, Panzica Construction. Although Ohio

---

[2] *See* Kathleen Steele Gaivin, "Petsche remains lone voice against funding option for Four Seasons assessment shortfall," *ScripType* (Sept. 27, 2018), available at:

https://www.scriptype.com/2018/09/27/petsche-remains-lone-voice-against-funding-option-for-four-seasons-assessment-shortfall/

Danielle Serino, "County billing blunder leaves Brecksville on the hook for hundreds of thousands of dollars," *WKYC* (Sept. 6, 2018), available at:

https://www.wkyc.com/article/news/local/cuyahoga-county/county-billing-blunder-leavesbrecksville-on-the-hook-for-hundreds-of-thousands-of-dollars/95-591715833

Bob Sandrick, "Brecksville residents sound off over city's payment of Four Seasons sewer taxes, *Cleveland.com* (Oct. 16, 2018), available at:

https://www.cleveland.com/brecksville/2018/10/brecksville_residents_sound_of.html

R.C. 2921.42(A) prohibits public officials from having an interest in the profits or benefits of a public contract with a political subdivision, R.C. 2921.42(C) makes the statute inapplicable when (1) the subject of the contract is necessary supplies or services; (2) the supplies or services are unobtainable elsewhere for the same or lower cost; (3) the treatment accorded to the public entity under the contract is either preferential to or the same as accorded to other customers in similar transactions; and (4) the transaction is conducted at arm's length, with full knowledge by the public entity involved of the public official's interest in the contract. *See Struewing v. Village of Yellow Springs*, 2d Dist. Greene No. 2013 CA 21, 2014-Ohio-1864.

18. The subcontract at issue was awarded to USA Roofing before Petsche became a council member, and Petsche had taken no part in the deliberations or decision to award the subcontract. Furthermore, Petsche's status as USA Roofing's owner was no secret to Brecksville officials. In 2013, Petsche met with Hruby concerning needed repairs on that building's cupola and exchanged correspondence regarding USA Roofing's quotes for the work. Former Council President, Mike Harwood, had been a project manager for Panzica Construction and worked directly with Petsche and USA Roofing on a prior project and exchanged correspondence with Petsche regarding the project. Matty had likewise corresponded with Petsche regarding USA Roofing's work on the Solon fire station in 2007. Petsche had also repeatedly signed contracts on USA Roofing's behalf that were approved by the Defendants on the City's behalf, including in December of 2017. And in August of 2018, February of 2019, and March of 2019, Petsche voluntarily recused himself from council proceedings due to USA Roofing's interest in the subject of those proceedings.

19. Hruby and Matty knew that USA Roofing's subcontract met the requirements of R.C. 2921.42(C). Nevertheless, on September 12, 2018, only six days after local news outlets first reported on the Four Seasons controversy to which Petsche alerted them, Hruby, at Matty's direction, submitted a letter to the Ohio Ethics Commission alleging that Petsche had committed violations of Ohio Ethics Law in connection with USA Roofing's subcontract with the City. Hruby's letter falsely

5

stated that the City was unaware of Petsche's connection to USA Roofing and its subcontract on the police station by stating that "no disclosure has been made by [Petsche] in the 9 months he has served on the City Council and during the Council Meetings he has attended." Hruby knew and intentionally omitted the fact that at least he, Matty, and the Council's president Mr. Harwood were all aware of Petsche's ownership of USA Roofing and involvement in the police station project. Based on Hruby's mischaracterization of the facts, the Ohio Ethics Commission opened an investigation against Petsche.

20. Hruby and Matty did not notify Petsche, let alone attempt to have a civil discussion with him about their pretextual "concerns" over ethical violations, instead proceeding in secret with their plan for political payback.

21. On February 19, 2019, at an executive session of City Council, Matty discussed with Defendants Veras, Redinger, and Carouse the investigation that he and Hruby had initiated with the Ohio Ethics Commission. At this meeting, the gathered parties colluded to ensure that the OEC investigation would conclude that Petsche had committed an ethics violation, hoping to trigger a criminal prosecution against Petsche. On information and belief, this was not the first time that Matty and Hruby had discussed their retaliatory scheme with the Defendant council-members.

22. On April 24, 2019, Defendants Veras, Redinger, and Carouse were interviewed by the OEC as part of its investigation of Petsche. At that interview, Veras, Redinger, and Carouse falsely claimed to have not known about Petsche's connection with USA Roofing and the police station subcontract until Matty informed them of the OEC investigation at an executive session of City Council, and suggested that Petsche attempted to mislead them as to same.

23. On May 29, 2019, Defendant Broski was interviewed by the OEC as part of its investigation of Petsche. At that interview, Broski falsely claimed that he did not know about Petsche's connection to the police station subcontract until Matty informed him of the OEC investigation at

an executive session of City Council, and suggested that Petsche attempted to mislead him as to same.

24. In addition to the facts set forth above, Petsche, throughout 2019 and 2020 as the allegations against him were discussed by the Defendants, repeatedly disclosed information to the Defendants confirming their awareness of his ownership of USA Roofing, including documented admissions by Defendants Hruby, Matty, and Harwood. The Defendants deliberately disregarded this information and concealed it from OEC and the Cuyahoga County Prosecutor's Office to help ensure that Petsche would be prosecuted.

25. Following its interviews with Defendants, the OEC prepared an investigative report, in which it concluded that Petsche violated R.C. 2921.42(A). The OEC report concluded that the exception contained in R.C. 2921.42(C) did not apply because, based on the information provided by Defendants, Petsche did not disclose his interest in the subcontract to the City and thus Petsche's involvement in the transaction was not at arm's length.

26. On September 23, 2019, the OEC referred the case to the Cuyahoga County Prosecutor for prosecution based on its findings.

27. On June 9, 2020, Petsche was indicted on four counts of violating or attempting to violate 2921.42(A)(1), a fourth degree felony under Ohio law, and was prosecuted in the Cuyahoga County Court of Common Pleas (Case No. CR-20-649412-A). On July 22, 2020, Petsche was required to post a $2,500 bond and ordered to submit a DNA specimen to the county sheriff. As a condition of his bond, Petsche was subject to regular reporting to and monitoring by County probation officials, and was prohibited from traveling outside of the state without permission from the presiding judge.

28. After nearly two years of litigation, the criminal court dismissed Count 3 against Petsche on March 14, 2022, and on March 16, 2022, the court granted Petsche's Rule 29 motion and entered a judgment of acquittal on all remaining charges. Petsche incurred more than $250,000 in attorneys' fees in defending against these felony charges.

29. Defendants specifically targeted Petsche because of his speech while other similarly situated public officials, who did *not* engage in the same type of speech as Petsche, were spared from having ethics investigations and criminal prosecutions brought against them, despite having engaged in far more egregious conduct, which was known to Defendants. For example, Defendants took no action against Dennis Rose, a former City Councilperson who also had a connection to the City's contract regarding the new police station. Panzica Construction, the general contractor on the project, was a client of Rose's law firm, Hahn Loeser & Parks, where Rose was a partner. Notwithstanding this potential conflict, Rose voted numerous times on matters involving in the new police station, including funding measures that would ensure that his client, Panzica, would receive payment. Rose even voted in favor of increasing the maximum price to be paid to Panzica for the police station. Yet, despite being aware of these facts, Defendants did not similarly initiate an ethics investigation against Rose or otherwise seek to have Rose prosecuted like they did with Petsche.

## V. Causes of Action

### Count 1
### Retaliatory Prosecution
### First Amendment and 42 U.S.C. § 1983

30. Plaintiff incorporates the previous allegations by reference.

31. Petsche has a right to criticize the government under the First Amendment of the U.S. Constitution and to be free from government retaliation against him for his speech and political advocacy.

32. Petsche engaged in conduct protected by the First Amendment, including specifically when he criticized the lack of transparency in the City's treatment of a $680,000+ shortfall in a municipal bond sinking fund for construction of the water and sewer lines to the Brecksville's Four Seasons neighborhood, where two of the City's councilpersons lived.

33. As retaliation for Petsche's protected activities, Defendants maliciously instituted a criminal felony prosecution against Petsche. Such adverse action would chill a person of ordinary firmness from engaging in speech that criticizes local government and challenges its policies.

34. Defendants were motivated to take this adverse against Petsche in part by Petsche's exercise of his First Amendment rights in publicly criticizing Defendants and engaging in political advocacy with which Defendants disagreed.

35. Probable cause did not exist to support the prosecution of Petsche under R.C. 2921.42(A) because R.C. 2921.42(C) made the statute inapplicable to USA Roofing's subcontract for the Brecksville police station. The proceedings would not have been instituted in the first place were it not for Defendants' false and intentionally misleading statements regarding their knowledge of Petsche's connection to USA Roofing and the police station subcontract.

36. Defendants' retaliatory acts against Petsche constituted the implementation of official municipal policy by the City and its public officials.

37. Defendants have not instituted prosecutions against other similarly situated individuals who did not engage in the same type of protected speech as Petsche.

38. By their actions alleged herein, taken under color of law, Defendants deprived Petsche of his right to be free from retaliation for exercising his First Amendment rights.

39. As a direct and proximate result of this unlawful conduct, which was intentional and showed a spirit of ill-will, hatred, and wanton disregard for Petsche's rights, Petsche has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, mental, emotional, and physical pain and suffering. Petsche is also entitled to punitive damages based on this unlawful and unconstitutional conduct.

### Count 2
### Malicious Prosecution
### Fourth Amendment and 42 U.S.C. § 1983

40. Plaintiff incorporates the previous allegations by reference.

41. With purpose and intent, and acting under color of law, Defendants engineered the baseless and malicious prosecution against Petsche knowingly and without probable cause, with the intent to deprive him of his liberty interests secured to him by the Fourth Amendment of the U.S. Constitution. These actions include those alleged herein whereby Defendants conspired to concoct a fabricated and falsified narrative, laden with false statements and material omissions, indicating that Petsche had an illegal interest in the roofing subcontract for Brecksville's new police station and that the Defendants were unaware of Petsche's connections to the roofing subcontract. Defendants deliberately withheld information that conclusively demonstrated Petsche's innocence of these malicious charges, the lack of probable cause to support them, and the inapplicability of the statute under which Petsche was charged.

42. By their actions alleged herein, taken under color of law, Defendants deprived Petsche of his right to be free from malicious and baseless prosecution that is secured to him by the Fourth Amendment and was clearly established as of September 15, 2020. *King v. Harwood*, 852 F.3d 568, 582-583 (6th Cir. 2017). All of these actions caused damage to Petsche, including restraint of his liberty in being subject to the baseless criminal prosecution and restrictions on his freedom of travel.

43. As a direct and proximate result of this unlawful conduct, which was intentional and showed a spirit of ill-will, hatred, and wanton disregard for Petsche's rights, Petsche has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, mental, emotional, and physical pain and suffering. Petsche is also entitled to punitive damages based on this unlawful and unconstitutional conduct.

### Count 3
### Fabrication/Falsification of Evidence, Due Process
### Fifth Amendment, Fourteenth Amendment, and 42 U.S.C. § 1983

44. Plaintiff incorporates the previous allegations by reference.

45. With purpose and intent, and acting under color of law, Defendants fabricated and falsified evidence against Petsche knowingly and without probable cause, with the intent to deprive him of

his liberty interests secured to him by the Fourth Amendment of the U.S. Constitution. These actions include those alleged herein whereby Defendants conspired to concoct a fabricated and falsified narrative, laden with false statements and material omissions, indicating that Petsche had an illegal interest in the roofing subcontract for Brecksville's new police station and that the Defendants were unaware of Petsche's connections to the roofing subcontract. Defendants deliberately withheld information that conclusively demonstrated Petsche's innocence of these malicious charges, the lack of probable cause to support them, and the inapplicability of the statute under which Petsche was charged.

46. By the actions alleged herein, Defendants deprived Petsche of his right to due process secured to him by the Fifth and Fourteenth Amendments. All of these actions caused damage to Petsche, including restraint to his liberty in being subject to a baseless criminal prosecution and restrictions on his freedom of travel.

47. As a direct and proximate result of this unlawful conduct, which was intentional and showed a spirit of ill-will, hatred, and wanton disregard for Petsche's rights, Petsche has suffered and will continue to suffer economic and non-economic damages for which these Defendants are liable, including but not limited to, mental, emotional, and physical pain and suffering. Petsche is also entitled to punitive damages based on this unlawful and unconstitutional conduct.

**Count 4**
**Malicious Prosecution under Ohio Law**

48. Plaintiff incorporates the previous allegations by reference.

49. The allegations set forth herein, if proven, establish Petsche's right to recover against Defendants on a claim for malicious prosecution under Ohio law.

50. Defendants maliciously instituted the prosecution of Petsche by giving false or misleading information to the Ohio Ethics Commission regarding Petsche's connection to the roofing subcontract for Brecksville's new police station.

11

51. Probable cause did not exist to support the prosecution of Petsche under R.C. 2921.42(A) because R.C. 2921.42(C) made the statute inapplicable to USA Roofing's subcontract for the Brecksville police station. The proceedings would not have been instituted in the first place were it not for Defendants' false and intentionally misleading statements regarding their knowledge of Petsche's connection to USA Roofing and the police station subcontract.

52. The criminal prosecution was terminated in Petsche's favor.

53. Defendants' malicious conduct, which was intentional, retaliatory, taken in the spirit of ill-will, hatred, and wanton disregard of Petsche's rights, caused Plaintiff to suffer substantial economic and non-economic harm, including, without limitation, mental anguish and emotional pain and suffering, attorneys' fees incurred in defending against the wrongful felony indictment, lost income, and other economic losses.

## VI. Prayer for Relief

Wherefore, Plaintiff John Petsche respectfully prays for judgment against Defendants in an amount in excess of $75,000.00 together with punitive damages, attorneys' fees, costs, expenses, and any other relief to which Plaintiff may be entitled or that the Court deems equitable and just.

## VII. Jury Demand

Plaintiff demands a trial by jury on all issues within the Complaint.

Respectfully submitted,

*/s/ Peter Pattakos*
Peter Pattakos (0082884)
Zoran Balac (0100501)
THE PATTAKOS LAW FIRM LLC
101 Ghent Rd., Fairlawn, OH 44333
P: 330.836.8533 | F: 330.836.8536
peter@pattakoslaw.com
zbalac@pattakoslaw.com

*Attorneys for Plaintiff John Petsche*