UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN PETSCHE, | ) | CASE NO.:  1:23-cv-00554 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | |
| | ) | |
| JERRY HRUBY, *et al.*, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

Before the Court is the motion for summary judgment (Doc. 30) filed by Defendants

Jerry Hruby, David Matty, Gerald Broski, Louis Carouse, Jr., Laura Redinger, Kimberly Veras

("Individual Defendants"), and the City of Brecksville ("City" or "Brecksville") (collectively,

"Defendants").  Plaintiff John Petsche ("Petsche") responded (Doc. 44), and Defendants replied

(Doc. 51).

For the reasons stated herein, Defendants' motion for summary judgment is GRANTED.

## I.    BACKGROUND

### A.    Statement of Facts

Petsche has lived in Brecksville since 1996.  (Doc. 1 at ¶ 12.)  Since that time, he has

engaged in local politics.  (*Id.*)

In 2012, Petsche and others led a successful city-wide "Democracy Day" ballot initiative

against corporate donations in U.S. elections.  (Doc. 32 at 296-99.)[1]  City leaders, including

Mayor Jerry Hruby ("Hruby") and Law Director David Matty ("Matty"), opposed the initiative.

---

[1] For ease and consistency, record citations are to the electronically stamped CM/ECF document
and PageID# rather than any internal pagination.

(*Id.* at 298-99.)  In 2015, Petsche ran for City Council and lost.  (*Id.* at 295; Doc. 45 at 929.)  In 2017, he ran again and was elected to City Council.  (Doc. 32 at 305-07; Doc. 44-8 at 825; Doc. 45 at 930.)  Petsche was a Democrat, while most City officials were Republicans.  (Doc. 1 at ¶ 13; Doc. 32 at 316-17.)

Since 1996, Plaintiff has owned a commercial roofing company, USA Roofing, Inc. ("USA Roofing").  (Doc. 32 at 295.)  In the fall of 2017, at the same time he was campaigning to be a Councilmember, USA Roofing was awarded a subcontract for roofing on the new Brecksville Police Station.  (*Id.* at 305.)

Panzica Construction Company ("Panzica") was the construction manager at risk, or general contractor, overseeing the Brecksville Police Station project.  (*See* Doc. 44-8 at 829; Doc. 47 at 1098-1106.)  For this project, Panzica did not submit subcontracts for City approval.  (Doc. 47 at 1105-06.)  Instead, Panzica was awarded the contract with the City for a guaranteed maximum price.  (*Id.*)  Panzica then selected the subcontractors for the project.  (*Id.*)

On December 7, 2018, on behalf of USA Roofing, Petsche signed the subcontract with Panzica for the Brecksville Police Station (the "subcontract").  (Doc. 44-8 at 836.)  The subcontract was for $154,000.  (Doc. 44-8 at 829.)  Petsche signed the subcontract after he was elected to City Council but before he was sworn in.  (Doc. 32 at 307; Doc. 44-8 at 825.)  On January 2, 2018, he was sworn in as a Councilmember.  (Doc. 32 at 307.)  On January 8, 2018, Panzica signed the subcontract with USA Roofing and it became effective.  (Doc. 44-8 at 836.)

After being sworn in, City Council meeting minutes show Petsche voted in favor of ordinances related the subcontract on three occasions: (1) on April 17, 2018, he voted in favor of issuing $100,000 in notes in anticipation of issuing bonds for the construction of the police station (Doc. 32 at 454-60); (2) on May 15, 2018, he voted in favor of issuing $2 million in sale

bonds for the construction of the police station (Doc. 32 at 461-66); and (3) on August 7, 2018, he voted in favor of an ordinance related to architecture services for the police station (Doc. 32 at 467-70).  (Doc. 32 at 353-56, 454-70.)  At those City Council meetings, Petsche did not formally disclose to Hruby, Matty, or the other Councilmembers that USA Roofing was a subcontractor on the police station project before voting on items related to the project.  (Doc. 32 at 348-50, 454-70; Doc. 45 at 988; Doc. 47 at 1115-18.)

Petsche believed his status as owner of USA Roofing was widely known amongst City officials.  (*See* Doc. 44 at 738.)  In 2007, Matty, who was Law Director for the City of Solon at that time, corresponded with Petsche regarding USA Roofing's work on the Solon Fire Station. (Doc. 32 at 336-37; Doc. 47 at 1090-91.)  In 2013, Hruby corresponded with Petsche about roofing repairs on the City's old town hall.  (Doc. 32 at 338-39; Doc. 44-8 at 812-13; Doc. 45 at 912-14.)  Petsche gave Hruby an estimate for the repairs.  (*Id.*)  In August 2017, Hruby also corresponded with Petsche about USA Roofing's bid for work on Brecksville's Fire Station. (Doc. 44-8 at 821-23; Doc. 45 at 937-46.)  Former City Council President, Mike Harwood ("Harwood"), had been a project manager for Panzica in 2014 and 2015.  (Doc. 32 at 337-38.)  In 2015, Harwood worked directly with Petsche and USA Roofing on a roofing project at a country club.  (*Id.*)  When Petsche campaigned for City Council, his campaign materials referenced his company.  (Doc. 45 at 931-32; Doc. 44-8 at 814-20.)  And in 2018, Petsche wore USA Roofing branded clothing when he volunteered to install Brecksville's Safety Town equipment.  (Doc. 45 at 951.)  Additionally, Petsche signed documents on behalf of USA Roofing that were on file with the City.  For instance, on June 15, 2018, Petsche registered USA Roofing with the Brecksville Building Department.  (Doc. 44-8 at 849.)  He also signed a contractor's bond dated November 27, 2017, on behalf of USA Roofing.  (*Id.* at 850.)

Around the end of July to early August 2018, a change order related to the Brecksville Police Station was submitted for Hruby's review.  (Doc. 44-8 at 827, 845-48; Doc. 45 at 970.) The proposed change order was to install a custom trim and weathervane on the Police Station roof for $4,821.  (Doc. 44-8 at 827, 845-48.)  When reviewing the change order, Hruby noticed the name "USA Roofing."  (*Id.* at 827.)  Hruby recognized this as Petsche's company.  (*Id.*)

Hruby asked for documents regarding USA Roofing and its connection to the police station project.  (*Id.*)  Hruby confirmed USA Roofing was a subcontractor.  (*Id.*)  On August 27, 2018, Hruby requested Petsche's 2017 Ohio Financial Disclosure Form, which was filed on May 10, 2018.  (*Id.* at 853-58.)  Hruby also spoke with the City Purchasing Director, Becki Riser, who was the City's point of contact with Panzica on the police station project.  (*Id.* at 828.)  Hruby asked her if she was aware USA Roofing was the roofing subcontractor on the project.  (*Id.*)  In response, Hruby received a list of subcontractors from the Panzica contract documents.  (*Id.*)  On the price estimate summary dated September 13, 2017, "USA," not "USA Roofing," was listed as the Brecksville Police Station subcontractor for roofing and asphalt shingles.  (*Id.* at 828, 859, 863.)  Hruby sought advice from Matty over the suspected violation of Ohio ethics laws.  (*Id.* at 828; Doc. 45 at 974, 995-96.)

As a councilmember, Petsche was an outspoken advocate for transparent government. (Doc. 1 at ¶ 15.)  Around September 2018, Petsche spoke out about a $680,000 assessment shortfall related to the Four Seasons neighborhood, where other City Council members lived. (Doc. 32 at 318, 323-24; Doc. 45 at 955-60.)  He criticized the City's debt repayment plan to local news outlets.  On September 6, 2018, a local news outlet first reported on the Four Seasons issue.  (Doc. 1 at ¶¶ 16, 19; Doc. 44 at 740-41.)

On September 12, 2018, Hruby, after consulting with Matty, submitted a letter to the Ohio Ethics Commission ("OEC").  (Doc. 44-8 at 825-28.)  The letter alleged Petsche had committed violations of Ohio Revised Code § 2921.42.  (*Id.*)

Ohio Revised Code § 2921.42(A) prohibits public officials from having an interest in the profits or benefits of a public contract with a political subdivision.  Under § 2921.42(C), there is no violation when all of the following apply: (1) the subject of the contract is necessary supplies or services for the political subdivision; (2) the supplies or services are unobtainable elsewhere for the same or lower cost; (3) the treatment accorded to the political subdivision is either preferential to or the same as that accorded to other customers in similar transactions; and (4) the transaction is conducted at arm's length, with full knowledge by the public entity involved of the public official's interest in the contract.

The OEC opened an investigation against Petsche.  (Doc. 47 at 1152.)  Around February 19, 2019, City Council held an executive session.  (Doc. 34 at 500-01; Doc. 36 at 569-70; Doc. 38 at 611-12, 616-17; Doc. 40 at 691-92; Doc. 44-8 at 877; Doc. 45 at 999-1000; Doc. 47 at 1117, 1147-50.)  Hruby and Matty were in attendance.  (*Id.*)  At the executive session, Matty informed Councilmembers Gerald Broski ("Broski"), Louis Carouse, Jr. ("Carouse"), Laura Redinger ("Redinger"), Kimberly Veras ("Veras") (together, the "Councilmember Defendants") that Petsche owned USA Roofing.  (*Id.*)  He told them an ethics complaint had been filed related to the subcontract.  (*Id.*)  Petsche was not in attendance and there are no minutes from that executive session.  (*Id.*; Doc. 32 at 333.)

In February, April, and May of 2019, the OEC interviewed other City Councilmembers and officials.  (*Id.* at 1088-90.)  On April 24, 2019, OEC investigators interviewed Carouse,

Redinger, and Veras.  (Doc. 34 at 521; Doc. 38 at 618; Doc. 40 at 692.)  On May 29, 2019, OEC

investigators interviewed Broski.  (Doc. 36 at 578.)

On May 9, 2019, Matty submitted a memorandum to the OEC recommending that

Petsche's conduct related to the subcontract warranted a criminal investigation.  (Doc. 44-8 at

873-76.)

On August 6, 2019, Councilmembers publicly confronted Petsche with their concerns

about the subcontract during the City Council meeting.  (Doc. 32 at 384-95.)  They criticized

Petsche for demanding government transparency when he was not transparent about the

subcontract before voting on related matters.  (*Id.* at 385-91.)

The OEC's investigative report concluded Petsche violated § 2921.42(A).  (Doc. 1 at

¶ 25; Doc. 44 at 743.)  The report also concluded the exception under § 2921.42(C) did not

apply.  (*Id.*)

On September 23, 2019, the OEC referred the case to the Cuyahoga County Prosecutor.

(Doc. 1 at ¶ 26; Doc. 44 at 743.)  Petsche was removed from City Council due to the

investigation and subsequent prosecution.  (Doc. 32 at 309.)

On June 9, 2020, a duly impaneled grand jury returned a four-count indictment against

Petsche for having an unlawful interest in a public contract in violation of § 2921.42(A)(1), a

fourth-degree felony under Ohio law.  (*See* June 9, 2020 Indictment, available at

http://cpdocket.cp.cuyahogacounty.us/.)[2]  The four counts addressed Petsche's alleged conduct

---

[2] The Court may take judicial notice of the state court records on the Cuyahoga County Court of
Common Pleas online docket (available at http://cpdocket.cp.cuyahogacounty.us/).  *See* Fed. R.
Evid. 201; *see also Lynch v. Leis*, 382 F.3d 642, 648 (6th Cir. 2004) (courts may take judicial
notice of state court records available online to the public) (citing *Lyons v. Stovall*, 188 F.3d 327,
332 n.3 (6th Cir. 1999)).

on April 17, 2018; May 15, 2018; March 5, 2019; and May 1, 2019, to May 21, 2019,

respectively.  (*Id.*)

On March 14, 2022, Petsche's bench trial began in the Cuyahoga County Court of

Common Pleas.  (*See* March 14, 2022 Journal Entry, available at

http://cpdocket.cp.cuyahogacounty.us/.)  The State dismissed Count Three before beginning its

case.  (*Id.*)  After all evidence was presented and arguments made, Petsche moved for a judgment

of acquittal under Ohio Criminal Rule 29.  (*See* March 16, 2022 Journal Entry, available at

http://cpdocket.cp.cuyahogacounty.us/.)  The court ruled that a rational trier of fact could not

have found the essential elements of the crimes proven beyond a reasonable doubt.  (*Id.*)  Petsche

was acquitted on Counts One, Two, and Four.  (*Id.*)

## B.    Procedural History

Plaintiff asserts the following four claims against the Individual Defendants and the City:

First Amendment Retaliatory Prosecution (Count One); Fourth Amendment Malicious

Prosecution (Count Two); Fourteenth Amendment Fabrication and Falsification of Evidence

(Count Three); and Malicious Prosecution under Ohio Law (Count Four).

Defendants move for summary judgment on all counts.  (*See* Doc. 30.)  The Individual

Defendants assert qualified immunity on the § 1983 claims and statutory immunity under

Chapter 2744 on the state law claim.  They also argue the City has no *Monell* liability on the

§ 1983 claims and is entitled to statutory immunity under Chapter 2744 on the state law claim.

Plaintiff responded in opposition.  (*See* Doc. 44.)  The Court addresses these arguments and

Plaintiff's responses in turn.

## II.     LAW AND ANALYSIS

### A.     Standard of Review

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  "Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and affidavits show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  The moving party bears the burden of showing that no genuine issues of material fact exist."  *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021) (citations and quotations omitted).  A "material" fact is one that "might affect the outcome of the suit under the governing law[.]"  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "[A] genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Abu-Joudeh v. Schneider*, 954 F.3d 842, 849-50 (6th Cir. 2020) (citations and quotations omitted).

"Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact."  *Queen v. City of Bowling Green, Ky.*, 956 F.3d 893, 898 (6th Cir. 2020) (quotation and citations omitted).  On summary judgment, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion.  *Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005).  A party asserting or disputing a fact must cite evidence in the record or show the record establishes either the absence or the presence of a genuine dispute.  *See* Fed. R. Civ. P. 56(c) & (e).  Rule 56 further provides "[t]he court need consider only" the materials cited in the parties' briefs.  Fed. R. Civ. P. 56(c)(2); *see also Street v. J.C. Bradford & Co.*, 886 F.2d

1472, 1479-80 (6th Cir. 1989) ("The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.").

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation and citation omitted).  The Court's role is not to make credibility determinations or "weigh" conflicting evidence. *Payne v. Novartis Pharms. Corp.*, 767 F.3d 526, 530 (6th Cir. 2014).  "The ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Id.*

## B.  First Amendment Retaliatory Prosecution (Count One)

For his First Amendment retaliation claim, Petsche must specifically prove: "(1) [he] engaged in constitutionally protected speech, (2) [he] suffered an adverse action likely to chill a person of ordinary firmness from continuing to engage in protected speech, and (3) that the protected speech was a substantial or motivating factor in the decision to take the adverse action." *Wood v. Eubanks*, 25 F.4th 414, 428 (6th Cir. 2022) (quotation omitted).

Petsche must also show Defendants lacked probable cause to press the underlying criminal charges. *Bickerstaff v. Lucarelli*, 830 F.3d 388, 399 (6th Cir. 2016) (citing *Hartman v. Moore*, 547 U.S. 250, 265-66 (2006) ("[b]ecause showing an absence of probable cause will have high probative force, . . . it makes sense to require such a showing as an element of a plaintiff's case")).

1.      **Individual Defendants**

"The doctrine of qualified immunity provides that 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 738 (6th Cir. 2022) (quoting *Williams*, 9 F.4th at 430).  When there is more than one individual defendant in a case, "[e]ach defendant's liability must be assessed individually based on his [or her] own actions."  *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010).

Once asserted by a defendant, a "[p]laintiff bears the burden of showing that defendants are not entitled to qualified immunity."  *Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018) (citing *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)); *Palma v. Johns*, 27 F.4th 419, 427 (6th Cir. 2022).  The plaintiff must demonstrate both the challenged conduct violated a constitutional right and the right was clearly established.  *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014).  "If the plaintiff fails to establish either element, the defendant is immune from suit."  *Id.*; *see also Barber v. Miller*, 809 F.3d 840, 844 (6th Cir. 2015) ("Once a defendant invokes qualified immunity, the plaintiff bears the burden of showing that (1) the defendant's acts violated a constitutional right and (2) the right at issue was clearly established at the time of the defendant's alleged misconduct.").  "Between these two considerations, [the Court] may take them in either order.  *Hall v. Navarre*, 118 F.4th 749, 759 (6th Cir. 2024) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

On June 9, 2020, a duly impaneled grand jury returned a four-count indictment against Petsche for violating or attempting to violate § 2921.42(A).  "[T]he finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of

probable cause." *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006) (citing *Higgason v. Stephens*, 288 F.3d 868, 877 (6th Cir. 2002)). "[A]n exception to this rule exists 'when the defendants knowingly present false testimony to the grand jury' to obtain an indictment, *Martin v. Maurer*, 581 F. App'x 509, 511 (6th Cir. 2014), or when they 'testify with a reckless disregard for the truth,' *Robertson v. Lucas*, 753 F.3d 606, 616 (6th Cir. 2014)." *Bickerstaff*, 830 F.3d at 397-98. "[A] plaintiff must bring forward substantial evidence to rebut" probable cause based on an indictment. *Id.* at 397 (citations omitted).

Petsche asserts the Individual Defendants gave false statements or made misleading omissions to the OEC investigators and prosecutors about their knowledge of his involvement with USA Roofing and the subcontract. To Petsche, City officials planned to trigger a felony prosecution against him in retaliation for his protected political speech on the Four Seasons issue and Democracy Day initiative. He asserts they intended to give a false impression of probable cause by concealing their knowledge that he owned USA Roofing.

Petsche argues USA Roofing's documents were in publicly available City files. (Doc. 44-8 at 849-50.) The former City Council president was a project manager for Panzica. (Doc. 32 at 337-38.) Hruby and Matty both previously dealt with Petsche in his capacity as owner of USA Roofing. Doc. 32 at 336-39; Doc. 44-8 at 812-13, 821-23; Doc. 45 at 912-1, 937-464; Doc. 47 at 1090-91.) Petsche referenced USA Roofing in his City Council campaign materials. (Doc. 45 at 931-32; Doc. 44-8 at 814-20.) To Petsche, these facts demonstrate Individual Defendants were aware or should have been aware of subcontract. If they had truthfully provided their knowledge of Petsche's ownership of USA Roofing during the OEC investigation, OEC investigators and prosecutors would have found the subcontract transaction was conducted at arm's length. Accordingly, Petsche would have met the fourth element of the exception under

§ 2921.42(C)(4).  Investigators and prosecutors would have concluded probable cause did not exist and he would not have been prosecuted, Petsche urges.

Instead, Petsche argues Hruby and Matty colluded with the Councilmember Defendants to ensure the investigation would trigger a retaliatory criminal prosecution against him. Specifically, Petsche asserts at the February 19, 2019 City Council executive session, Hruby and Matty formed their retaliatory plan with the Councilmember Defendants.  Petsche also asserts Hruby and Matty instructed the Councilmember Defendants to keep their concerns confidential.

Because the Court must assess each defendant's liability individually, the Court will address each Individual Defendant in turn.

### a)    Carouse

Carouse testified he learned Petsche owned USA Roofing at the executive session on February 19, 2019.  (Doc. 34 at 500-01.)  On April 24, 2019, OEC investigators interviewed Carouse.  (Doc. 34 at 521.)

### b)    Redinger

Redinger testified she learned Petsche owned USA Roofing at the executive session on February 19, 2019.  (Doc. 38 at 611-12, 616-17.)  On April 24, 2019, OEC investigators interviewed Redinger.  (Doc. 38 at 618.)

### c)    Veras

Veras testified she learned Petsche owned USA Roofing at the executive session on February 19, 2019.  (Doc. 40 at 691-92.)  On April 24, 2019, OEC investigators interviewed Redinger.  (Doc. 40 at 692.)

#### d)     Broski

Broski testified he learned Petsche owned USA Roofing at the executive session on February 19, 2019.  (Doc. 36 at 569-70.)  On May 29, 2019, OEC investigators interviewed Broski.  (Doc. 36 at 578.)

#### e)     Hruby

Petsche points to Hruby's September 12, 2018 letter to the OEC as evidence that Hruby made false statements or misleading omissions about Petsche's ownership in USA Roofing. (Doc. 44 at 748; Doc. 44-8 at 825-28.)  Specifically, Petsche asserts Hruby withheld his knowledge that Petsche owned USA Roofing when he submitted the letter.  However, the record before the Court does not support this assertion.  In Hruby's letter, Hruby did not state City officials were unaware that Petsche owned USA Roofing.  (Doc. 44-8 at 825-28.)  Hruby stated that Petsche did not disclose the subcontract to City Council or City officials up to and including September 7, 2018.  (*Id.* at 826, 828.)  Hruby explained he did not know of Petsche's involvement with subcontract until Petsche negotiated a change order on behalf of USA Roofing around July and August 2018.  (*Id.* at 825-27.)  Hruby then sought confirmation that USA Roofing was the roofing subcontractor.  (*Id.* at 827.)  When he was given the Panzica contract documents, he observed that "USA," not "USA Roofing," was listed as a subcontractor.  (*Id.* at 828.)  He then consulted with Matty, who determined the matter should be referred to the OEC. (*Id.*)

Hruby further testified he never misled any investigators about his knowledge that Petsche owned USA Roofing.  (Doc. 45 at 982-83, 986-93.)  He simply conveyed to them that Petsche did not disclose the subcontract.  (*Id.*)  Hruby was interviewed by OEC investigators on February 7, 2019.  (*Id.* at 1015-20.)  He discussed the issue with Councilmembers at executive

session on February 19, 2019.  Hruby did not testify before the grand jury or at the prosecutor's office.  (*Id.* at 1028.)

### f)  Matty

Petsche similarly points to Matty's May 9, 2019 memorandum to the OEC as evidence that Matty made false statements or misleading omissions about Petsche's ownership in USA Roofing.  (Doc. 44 at 742-43; Doc. 44-8 at 873-76.)  Again, the memorandum does not state Petsche concealed his ownership of USA Roofing.  (*See* Doc. 44-8 at 873-76.)  Matty detailed that during the relevant time, Petsche did not disclose his company had been awarded the subcontract.  (Doc. 44-8 at 873.)  Matty stated Petsche voted on matters related to the subcontract at City Council meetings without disclosure to Hruby or City Council.  (Doc. 44-8 at 874-75.)  It was his assessment that Petsche violated § 2921.42(A).  (*Id.*)  In the memorandum, Matty noted it was unknown to him at the time whether Petsche met the first three elements of the exception under § 2921.42(C).  (*Id.* at 874.)

At his deposition, Matty testified he was not the City prosecutor at trial, Sergio Digeronomo was.  (Doc. 47 at 1158-59.)  Matty provided the information he had to Digeronomo, but Matty did not work with the prosecution, and he did not even receive the ethics opinion from the OEC.  (*Id.*)

Petsche has not put forth evidence, let alone substantial evidence, of false statements or misleading omissions the Individual Defendants allegedly made to investigators, prosecutors, or the grand jury.  Petsche makes conclusory assertions they made false statements and misleading omissions that were material to the grand jury's decision to indict him.  But he does so without citing to any supporting evidence.  (*See* Doc. 44 at 750, 751, 754.)

What is more, neither Hruby's letter nor Matty's memorandum state that City officials did not know of Petsche's affiliation to USA Roofing. (Doc. 44-8 at 825-28, 873-76.) They both asserted Petsche did not formally disclose that USA Roofing had the subcontract prior to voting on related matters at City Council meetings. (*Id.*) Other than discussing the subcontract with a member of the City Planning Commission who was also involved in the project, Petsche did not recall explicitly disclosing the subcontract to any other City official. (Doc. 32 at 348-50.)

At his deposition, Petsche admitted he never saw documents indicating Hruby and Matty launched a retaliatory prosecution; he did not review Hruby's letter to the OEC; he was not in attendance at the February 19, 2019 executive session; and he did not recall seeing notes from Individual Defendants' interviews with OEC investigators. (*Id.* at 330-36.) Petsche had no knowledge of what Individual Defendants said to investigators or prosecutors other than what was said at his criminal trial or in the OEC investigative report, which are not part of the record before the Court. (*Id.* at 340-42.) It is not even clear which, if any, of the Individual Defendants gave grand jury testimony.

Even if Individual Defendants misleadingly omitted prior knowledge of Petsche's affiliation with USA Roofing when speaking with investigators or prosecutors, this still would not defeat probable cause for two additional reasons. First, to rebut probable cause based on an indictment, the false statements or misleading omissions must be material to Petsche's ultimate prosecution. *See King v. Harwood*, 852 F.3d 568, 587 (6th Cir. 2017). Here, what is material is whether Individual Defendants knew about Petsche's affiliation with USA Roofing *and* his interest in the subcontract, not just that Petsche owned USA Roofing. Petsche points to no evidence showing any Individual Defendant falsely or misleading concealed their knowledge of the subcontract.

Second, the exception under § 2921.42(C) is an affirmative defense.  *See Sun Bldg. Ltd. P'ship v. Value Learning & Teaching Acad., Inc.*, 175 N.E.3d 10, 23 (Ohio Ct. App. 2021). "[T]he existence of a possible affirmative defense does not always defeat a finding of probable cause."  *Everson v. Leis*, 556 F.3d 484, 500 (6th Cir. 2009) (citation omitted).  Even where "the circumstances suggest that a suspect may have an affirmative defense, if a reasonable officer would not 'conclusively know' that the suspect is protected by the defense, then he is free to arrest the suspect provided there is probable cause to do so."  *Young v. Owens*, 577 F. App'x 410, 414 (6th Cir. 2014) (quoting *Fridley v. Horrighs*, 291 F.3d 867, 873 (6th Cir. 2002)). Individual Defendants' knowledge of USA Roofing and the subcontract is only relevant to § 2921.42(C)(4)— one of four required elements of the affirmative defense.  Even if investigators and prosecutors had this information, they would not "conclusively know" Petsche was protected by the defense.  Petsche has not established Individual Defendants conclusively knew he met the other three elements required for the defense, or why the OEC investigators and prosecutors should have come to that conclusion.  In fact, in Matty's memo to the OEC, he explicitly stated he did not know whether Petsche met the first three elements of the exception. (Doc. 44-8 at 874.)  And the record before this Court does not address those three elements. Petsche has not brought forward substantial evidence to rebut probable cause.

For these reasons, all Individual Defendants are entitled to qualified immunity on Count One.

### 2.      The City

The question of whether a municipality is liable under § 1983 has two parts: "(1) whether [the] plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation.'"  *Lee v. Metro. Gov't of Nashville & Davidson Cnty.*, 432 F.

App'x 435, 449 (6th Cir. 2011) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 120

(1992)).  Accordingly, "there is no liability under *Monell* without an underlying constitutional

violation." *Zucker v. City of Farmington Hills*, 643 F. App'x 555, 570 (6th Cir. 2014) (citing

*Robertson*, 753 at 622); *see also Morrow v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 22-

5232, 2023 U.S. App. LEXIS 21582, 2023 WL 5237332 (6th Cir. Aug. 15, 2023), *cert. denied*,

144 S. Ct. 2534 (2024).

 Although a First Amendment retaliation plaintiff must demonstrate a lack of probable

cause, under *Lozman v. City of Riviera Beach*, 585 U.S. 87, 101 (2018), showing a lack of

probable cause is not necessary in retaliation claims where a governmental entity, such as a

municipality, enacts an official policy to retaliate against a citizen's speech.  *See Novak v. City of*

*Parma, Ohio*, 932 F.3d 421, 429-30 (6th Cir. 2019).

 Lozman brought a First Amendment retaliation claim against the city after being arrested

for disorderly conduct at a council meeting.  *Lozman*, 585 U.S. at 92-93.  He had also previously

criticized city officials.  *Id.*  Although Lozman "concede[d] that there was probable cause for the

arrest," the Supreme Court concluded the existence of probable cause itself did not doom his

claim.  *Id.* at 95, 100-01.  The Court highlighted five characteristics: (1) Lozman alleged "more

governmental action than simply an [officer's] arrest" because he claimed the city "itself

retaliated against him pursuant to an 'official municipal policy' of intimidation"; (2) Lozman

alleged the city's retaliation plan was "premeditated" and formed months earlier (before the

arrest); (3) Lozman had "objective evidence" of a policy motivated by retaliation—he had a

transcript of a closed-door meeting where a councilmember stated the city should use its

resources to "intimidate" Lozman and others who filed lawsuits against the city; (4) there was

less of a concern about the causation problem because the city's official policy of retaliation was

formed months earlier, there was little relation between the "protected speech that prompted the retaliatory policy and the criminal offense (public disturbance) for which the arrest was made," and "it was unlikely that the connection between the alleged animus and injury will be weakened by an official's legitimate consideration of speech"; and (5) the plaintiff's speech—the right to petition—was "one of the most precious of the liberties safeguarded by the Bill of Rights" and was "high in the hierarchy of First Amendment values." *Id.* at 100-01.

Because probable cause does not defeat a claim under *Lozman*, the *Mt. Healthy Bd. of Education v. Doyle*, 429 U.S. 274 (1977), burden-shifting framework applies to *Monell* retaliation claims. Under *Mt. Healthy*, the plaintiff has the burden of proving by a preponderance of the evidence that the impermissible motive was a substantial factor for the adverse action. 429 U.S. at 287. Once the plaintiff does this, the plaintiff has made out a prima facie case and will prevail on the merits unless the defendant can prove, by a preponderance of the evidence, that the defendant would have taken the same action even in the absence of the protected conduct. *Id.* at 287.

Here, the first two elements of First Amendment retaliation are not disputed: Petsche's criticisms of City Council were protected political speech, and he was subject to a criminal felony prosecution. Only causation is disputed.

Proving causation "generally requires that the protected speech be a 'but-for cause' of the harmful action." *Blackwell v. Nocerini*, 123 F.4th 479, 488 (6th Cir. 2024) (quoting *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019)). The "but-for" inquiry asks: Would the defendant still have taken the harmful action if the plaintiff had not spoken? *Id.*

Petsche argues Hruby and Matty colluded with City Councilmembers to retaliate against him for criticizing the City's handling of the Four Seasons shortfall. (Doc. 44 at 748.) Even so,

Petsche must establish his "constitutional injury was 'incurred because of the execution of that policy.'"  *Hall v. Navarre*, 118 F.4th 749, 757 (citing *Jackson v. City of Cleveland*, 925 F.3d 793, 829 (6th Cir. 2019)).  Plaintiff must show "the City 'was the moving force' behind the alleged injury.'"  *Id.* (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) ("*Bryan County*")).  Petsche must have evidence Defendants initiated the ethics investigation against him in retaliation for his protected activity, and the City was deliberately indifferent to the possible constitutional consequences of the investigation.  *See id.* at 758 (citing *Bryan County*, 520 U.S. at 407).

Petsche has not presented any objective evidence connecting the initiation of the ethics investigation to his protected speech.  As discussed above, it is undisputed that:

- Petsche signed the contract after he was elected as a Councilmember.  The subcontract was fully executed after Petsche was sworn in.  (Doc. 32 at 307; Doc. 44-8 at 825, 829, 836.)

- On April 17, 2018, May 15, 2018, and August 7, 2018, Petsche voted on matters related to the Brecksville Police Station project without disclosing his interest in the subcontract.  (Doc. 32 at 348-50, 353-56, 454-70; Doc. 45 at 988; Doc. 47 at 1115-18.)

- The list of subcontractors in the City's files named "USA," not "USA Roofing," as the roofing subcontractor.  (Doc. 44-8 at 828, 859, 863.)

There are no facts showing the Councilmember Defendants had a retaliatory animus against Petsche.  The record shows they were informed of USA Roofing's subcontract on February 19, 2019, five months after Hruby submitted the ethics complaint to the OEC.  Any public statements these defendants made criticizing Petsche at the August 6, 2019 City Council meeting, almost a year after the investigation was initiated, do not establish but-for causation.  (*See* Doc. 32 at 389.)  Petsche admitted that statements at the August 6, 2019 meeting were related to his conduct regarding the subcontract, not his protected speech.  (*Id.* at 387-89.)

Even as to Matty and Hruby, Petsche asserts causation can be inferred based on the timing of Hruby's letter to the OEC.  Hruby, after conferring with Matty, sent his ethics complaint on September 12, 2018.  (Doc. 44-8 at 825-28.)  This was just six days after the first local news report on the Four Seasons shortfall issue appeared, on September 6, 2018.  (*See* Doc. 44 at 740-41.)  But "temporal proximity alone is rarely, if ever, sufficient to establish causation." *Sensabaugh v. Halliburton*, 937 F.3d 621, 630 (6th Cir. 2019) (citation omitted).

Hruby began to put together that Petsche had the subcontract around July of 2018.  (Doc. 44-8 at 827, 845-48; Doc. 45 at 970.)  He had confirmation around August 2018 in connection with a change order that was submitted for Hruby's review.  (*Id.*)  At that point, Petsche had already voted on issues that affected his subcontract at City Council meetings, but he did not formally disclose he had the subcontract to City Council or to Hruby.  (Doc. 32 at 348-50, 353-56, 454-70; Doc. 45 at 988; Doc. 47 at 1115-18.)  Hruby then gathered documentation on the subcontract.  (Doc. 44-8 at 8827.)  In fact, the record demonstrates Hruby began collecting this documentation as early as August 27, 2018, before the first article on the Four Seasons shortfall issue was published.  (*Id.* at 827, 853-58.)  Hruby then submitted a complaint to the OEC on September 12, 2018, after consulting with his Law Director.  (*Id.* at 825-28.)

Similarly, Matty's May 9, 2019 memorandum recommended a criminal investigation because Petsche voted on matters affecting his subcontract without disclosing he had the subcontract to the Mayor or to Councilmembers.  (*Id.* at 873-76.)  Matty requested the investigation with urgency because Petsche had recently bid on another City project.  (*Id.* at 871.)  In September 2019, the OEC referred the investigation to prosecutors a year after the initial complaint.  Other than the date of Hruby's initial letter to the OEC, Petsche has not put forth objective evidence linking Petsche's public corruption prosecution to his protected speech.

Petsche asserts retaliatory intent can be inferred because Hruby and Matty instructed the Councilmember Defendants to keep the OEC investigation confidential when they could have come to Petsche with their ethics concerns.  But Petsche has not established they were under any obligation to inform him of the ongoing investigation.  Even if they had made Petsche aware of the investigation, it would have had no bearing on allegedly improper conduct Petsche had already taken at prior City Council meetings.  Additionally, Petsche raises Hruby and Matty's conversation about disqualifying him as mayoral candidate in 2019.  (*See* Doc. 44-8 at 881.)  He also points to statements they made in 2022 expressing their displeasure with Petsche's acquittal and subsequent court rulings.  (*Id.* at 879-80.)  To Petsche, these facts lead to an inference of retaliatory intent.

Unlike in *Lozman*, where the plaintiff had a transcript of the closed-door city council meeting, Plaintiff has not presented any "objective evidence of a policy motivated by retaliation to survive summary judgment."  *Lozman*, 585 U.S. at 100-01; *see also Brown v. City of Albion*, No. 22-CV-1240, 2024 WL 2178304, at *3, 2024 U.S. Dist. LEXIS 87368, at *7 (W.D. Mich. May 15, 2024).[3]  Nor does this record direct the Court to statements made by City officials that would support Petsche's theory that the actions taken against him were for retaliatory reasons. Plaintiff has not met the but-for causation standard.

The record demonstrates City officials would have reported the same ethics concerns about the subcontract in the absence of Plaintiff's protected conduct.  Petsche's allegedly improper City Council votes took place before the Four Seasons issue became public.  In fact, Hruby began investigating the suspected ethical violations in August 2018, before the first news

---

[3] Furthermore, Plaintiff does not cite authority to extend the reasoning in *Lozman*, a retaliatory arrest claim, to this retaliatory prosecution claim.

article on the Four Seasons issue was published on September 6, 2018.  He consulted with Matty, the City's Law Director, who advised him regarding the possible ethics violations.  Hruby made an ethics complaint with the OEC.  The OEC then investigated the complaint.  Following the investigation, the OEC referred the matter to the Cuyahoga County Prosecutor.  And a duly impaneled grand jury returned a four-count indictment.

Even giving Petsche all inferences to which he is entitled, Petsche has not shown the record, taken as a whole, could lead a rational trier of fact to find for him.  Petsche has not put forth objective evidence that the ethics investigation was intended as retaliation against his political speech.  Nor has he put forth evidence the City was deliberately indifferent to the possible constitutional consequences of investigating the ethics concerns.  Petsche has not established a First Amendment violation.   For these reasons, the City is entitled to summary judgment on Count One.

### C.    Fourth Amendment Malicious Prosecution (Count Two)

For a Fourth Amendment malicious prosecution claim, a plaintiff must prove: (1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.  *Robertson*, 753 F.3d at 616.

Because malicious prosecution claims require Plaintiff to show a lack of probable cause, the probable cause analysis discussed above applies to each of the Individual Defendants.  Here, a duly impaneled grand jury returned an indictment against Petsche.  As discussed above, Petsche has not put forth substantial evidence demonstrating the Individual Defendants made

false statements or misleading omissions that were material to his prosecution.  This claim also fails against the Individual Defendants.

Additionally, as to the Councilmember Defendants, there is no evidence they participated in or influenced the decision to prosecute Petsche.  *See Young v. Owens*, 577 F. App'x 410, 417 (6th Cir. 2014) ("plaintiffs fail to point to any evidence supporting their contention that the defendants influenced or participated in the decision to prosecute").  The record indicates they were informed of Petsche's affiliation with USA Roofing and the subcontract on February 19, 2019.  This was five months after Hruby's initial complaint to the OEC on September 12, 2018.  They were then interviewed by OEC in April and May of 2019.  Plaintiff has not put forth evidence to rebut these facts.  He also has not demonstrated they were involved in the decision to prosecute him, spoke with prosecutors, or gave grand jury testimony.

Petsche has not established a Fourth Amendment violation.  Accordingly, there is no *Monell* liability for the City.  *Zucker*, 643 F. App'x 570 (citing *Robertson*, 753 F.3d at 622); *Lee*, 432 F. App'x at 449.  This Count is summarily dismissed as to all Defendants.

> **D.    Fourteenth Amendment Fabrication and Falsification of Evidence (Count Three)**

Petsche brings a claim for fabrication and falsification of evidence under "Due Process Fifth Amendment, Fourteenth Amendment, and 42 U.S.C. § 1983."  However, the Fifth Amendment's due process clause "only prohibits due process violations by the federal government."  *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 n.3 (6th Cir. 2007).  Petsche's claim can therefore only proceed under the Fourteenth Amendment's due process clause.  "To prevail on a fabrication claim, a plaintiff who was *convicted* must show that an officer 'knowingly fabricate[d] evidence against him' and 'a reasonable likelihood exists that the false evidence would have affected the jury's decision."  *Anderson v. Knox Cnty.*, No. 22-5280,

2023 WL 4536078, at *8, 2023 U.S. App. LEXIS 17970, at *21 (6th Cir. July 13, 2023) (emphasis in original) (quoting *France v. Lucas*, 836 F.3d 612, 629 (6th Cir. 2016)).

Petsche was not convicted.  The State voluntarily dismissed one of the four counts against him.  After a bench trial, the court acquitted him on all remaining charges.  The fabrication and falsification of evidence claim fails as a matter of law.

### E.     Ohio Law Malicious Prosecution (Count Four)

To state a malicious prosecution claim under Ohio law, a plaintiff must show: (1) malice in instituting or continuing the prosecution; (2) lack of probable cause; and (3) termination of the prosecution in favor of the criminal defendant.  *Criss v. Springfield Twp.*, 564 N.E.2d 440, 443 (Ohio 1990); *Trussell v. General Motors Corp.*, 559 N.E.2d 732, 735, 144 (Ohio 1990).

Defendants assert this state law malicious prosecution claim fails for the same reason as the Fourth Amendment claim.  Under Ohio law, "[a]n indictment is *prima facie* evidence of probable cause and a plaintiff must bring forward substantial evidence to rebut this."  *Carlton v. Davisson*, 662 N.E.2d 1112, 1121 (Ohio Ct. App. 1995) (citations omitted).  Such evidence must establish the "indictment resulted from perjured testimony or that the grand jury proceedings were otherwise significantly irregular."  *Deoma v. Shaker Hts.*, 587 N.E.2d 425, 428 (Ohio Ct. App. 1990).

On the federal malicious prosecution claim addressed above, Petsche argue he rebutted probable cause.  In a footnote, Petsche asserts, "This same analysis applies equally to Defendants' probable-cause argument for summary judgment on Plaintiff's state-law malicious prosecution claim."  (Doc. 44 at 751 n.5.)  Petsche also does not address Defendants' assertions of statutory immunity under Chapter 2744.  But as detailed above, Petsche has not brought

forward substantial evidence to rebut the probable cause determination of a duly impaneled grand jury.  His state law malicious prosecution claim fails for the same reason.

## III.    CONCLUSION

For the reasons stated herein, Defendants' motion for summary judgment (Doc. 30) is GRANTED.


**IT IS SO ORDERED.**


**Date:**  March 26, 2025

BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE